UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                            **Case No. 3:11cr24/MCR**

**TELLY J. HILL, a/k/a "Tally,"**
**ERICK D. SMITH, a/k/a "Tator,"**
**and ISMAEL A. RODRIGUES,**

    **Defendants.**

_____/

**ORDER ON MOTION TO SUPPRESS**

    Pending before the court is a motion to suppress evidence seized during the execution of a search warrant, filed by Defendant Telly J. Hill ("Hill"). (Doc. 19.) The court has determined that no evidentiary hearing is necessary and that the motion is due to be denied for the following reasons.

**Background**

    The second superseding indictment (doc. 54) charges Hill with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base ("crack") from May 1, 2009, through the date of the indictment, in violation of 21 U.S.C. § 841(b)(1)(A)(ii) & (iii) and § 846; and using a firearm during and in relation to a drug trafficking crime and in furtherance of the conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i) & (iii), and § 2. The charges were based on an investigation into Hill's alleged drug distribution organization undertaken by the Pensacola Police Department, the Escambia County Sheriff's Office, and the Bureau of Alcohol, Tobacco, Firearms and Explosives during 2010.

    On November 19, 2010, Pensacola Police Department Detective Matthew Coverdale, who had been a detective for six years with special training regarding the

investigation of crimes involving the sale of narcotics, applied for a state warrant to search 4201 Jean Street in Escambia County, Florida.  Detective Coverdale attested to the following facts in his affidavit.  From September through November 2010, he met with a confidential informant ("CI"), who represented he/she could purchase crack cocaine from a subject the CI knew as "Tally," a black male with "dreads" who had recently moved from a residence at C Street and Jackson Street.  Through this information and the CI's physical description of Tally, Detective Coverdale suspected that Tally was Defendant Hill, and this was confirmed when the CI positively identified Hill from a police photograph.  Detective Coverdale knew that previously, Hill's residence had been leased under his girlfriend's name, Yolanda Ann King.  In his experience as a narcotics investigator, Detective Coverdale was aware that narcotics dealers often attempt to obscure their place of residence from law enforcement by using the name of another as the resident of record, as Hill had done before.  Coverdale discovered that Hill's girlfriend then lived at 4201 Jean Street, and for ten days in November 2010, law enforcement conducted surveillance at the residence.  During this ten-day period, they observed Hill at the residence on several occasions.  Many times, law enforcement officers observed Hill exiting the residence and traveling to residences and hotels where he would remain for less than five minutes before returning to the residence.  Coverdale stated in his affidavit that, in his experience, this type of activity is indicative of narcotics sales.

During the ten-day surveillance of 4201 Jean Street, the CI arranged to purchase crack cocaine from Hill.  Law enforcement ensured that the CI had no money or drugs in his/her possession prior to the controlled buy.  Law enforcement provided the CI with a listening device and recorded police money prior to the buy.  While under constant and uninterrupted surveillance, the CI placed a controlled telephone call to Hill, requested to purchase an amount of crack, and arranged to meet Hill at a specified location.  Immediately after the call, law enforcement observed Hill exit the residence at 4201 Jean Street and travel directly to the arranged meeting location.  Hill made contact with the CI as planned, and the CI purchased an amount of crack from Hill in exchange for the recorded police money.  The affidavit states that law enforcement conducted constant and

uninterrupted surveillance throughout the transaction. The affidavit also listed Hill's criminal history, which included a prior conviction in 2009 for selling cocaine and possession of marijuana and another case involving drug possession and drug equipment marked "adjudication withheld/no action taken." (Doc. 19-1, at 4.)

The state circuit court judge found probable cause to issue a search warrant for the residence at 4201 Jean Street on the basis of Detective Coverdale's affidavit. The search warrant was executed on or about November 24, 2010, at 4201 Jean Street. Hill was located inside the residence hiding underneath a bed. Law enforcement seized crack cocaine, a large amount of United States currency, and drug manufacturing and distributing paraphernalia. Hill was advised of his rights and made the following admissions: (1) all the crack was his; (2) the money was drug proceeds; (3) his source of supply was Erik Smith; (4) Smith obtained the cocaine from Mexicans in Foley, Alabama; (5) he and Smith had been involved with well over five kilograms of cocaine; and (6) Hill had previously possessed a .380 caliber handgun to protect the drugs and the drug proceeds. Hill asserts that the warrant was not supported by probable cause, and he moves to suppress all physical evidence seized as well as statements he made as "fruit of the poisonous tree" (doc. 19). *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The Government opposes the motion (doc. 22).

**Discussion**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. For a search warrant to be valid under Fourth Amendment principles, it must be supported by probable cause, which means that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tate*, 586 F.3d 936, 942-43 (11th Cir. 2009) (internal marks omitted)*, cert. denied*, 131 S. Ct. 634 (2010). As the term implies, "probable cause" deals with probabilities and practical considerations, not technical precision. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Courts view the determination of probable cause by considering the totality of the circumstances through "the practical considerations of everyday life on which reasonable

and prudent men, not legal technicians, act." *Id.* This practical, common-sense determination requires the issuing magistrate to consider the affidavit "in light of all the circumstances set forth," "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* at 238. The search warrant affidavit must contain "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). The contents of the affidavit are evaluated to determine whether there is a connection between the defendant and the residence to be searched, as well as a link between the residence and the suspected criminal activity. *See id.* Furthermore, "a presumption of validity" attaches to an affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Supreme Court precedent has established an exclusionary rule forbidding the use at trial of evidence obtained in violation of the Fourth Amendment in certain circumstances. *See Herring v. United States*, 555 U.S. 135, 129 S. Ct. 695, 699 (2009); *see also Martin*, 297 F.3d at 1312 ("Evidence seized as a result of an illegal search may not be used by the government in a subsequent criminal prosecution."). However, there exists a good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984). Under the *Leon* good faith exception, "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Martin*, 297 F.3d at 1313. In deciding whether the exclusionary rule applies, the court considers whether the officers involved acted with "objective reasonableness." *Herring*, 129 S. Ct. at 699-700 (citing *Leon*, 468 U.S. at 923 n.24). To warrant exclusion, the officer's conduct must not be merely negligent, but "deliberate, reckless, or grossly negligent," *id.* at 702, because the rule operates as a judicially designed remedy "to safeguard Fourth Amendment rights generally through its deterrent effect," *Leon*, 468 U.S. at 906. In undertaking this analysis, the court is mindful of the Supreme Court's instruction that exclusion should be "our last resort, not our first impulse." *Herring*, 129 S. Ct. at 700.

Hill argues that suppression is warranted because there was no nexus between the

residence and his alleged drug dealing activity. Hill argues that this case is distinguishable from *United States v. Akel*, 337 Fed. Appx. 843, 858 (11th Cir. 2009) (unpublished), in which the court found probable cause on facts somewhat similar to this case. According to Hill, *Akel* is distinguishable because the search warrant affidavit in that case included not only surveillance but also additional facts such as "trash pulls" from the residence, in which officers found bags with marijuana residue in the trash at the residence, and also that the defendant returned immediately to the residence after the controlled buys in *Akel*. The court concluded in *Akel* that these facts were sufficient from which to find the requisite nexus between the residence and contraband. *Id.*

Despite the lack of trash pulls in this case or a statement that the defendant returned directly to the residence after the one controlled buy in this instance, the court nonetheless finds that the affidavit is sufficient to establish probable cause. First, a nexus was clearly established between Hill and the residence through prior investigative work and direct observation. The affiant was aware that "Tally" was Hill; the CI identified Hill in a police photograph; the affiant knew Hill had lived with his girlfriend on C Street, that the lease was in the girlfriend's name, and that putting someone else on the lease was something commonly done by drug dealers to avoid police detection; the CI confirmed that Hill had recently moved; the affiant discovered the girlfriend's address and also confirmed Hill's presence by observing him coming and going from the residence on numerous occasions during the ten-day period prior to the search warrant application. Second, the warrant application included a sufficient link between the residence and Hill's drug dealing activity – law enforcement officers, aware of Hill's criminal history, observed him coming and going with short visits to residences or hotels, consistent with drug dealing activity, and they observed him leave the residence just prior to delivering crack to the CI, with no stops in between. The totality of these circumstances sufficiently raises a fair probability that Hill was storing drugs and proceeds at the residence. *See United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir.) (noting a nexus may be established from the circumstances involved even without direct observation), *cert. denied*, 498 U.S. 901(1990); *see also United States v. Ellison*, 632 F.3d 347, 349-50 (6th Cir. 2011) (finding probable cause where a

confidential informant had observed participants to a drug deal coming out of or returning to the house searched).  Additionally, in making the probable cause determination, the issuing judge was justified in considering Hill's criminal history along with this evidence of his recent conduct which, in the affiant's experience, was consistent with drug dealing activity.  *See United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).  The court finds that a sufficient nexus has been established between the defendant, the residence, and the criminal activity to support the finding of probable cause to search.

Even assuming the affidavit were insufficient to support a finding of probable cause, however, the court would find that the officers acted in good faith.  The Government argues that the *Leon* good faith exception applies because the even if the court finds probable cause to be lacking, the officers executed the search warrant in good faith, and their reliance on the search warrant was objectively reasonable.  Hill makes no argument that the good faith exception does not apply in this case, and the court's review of the record provides no basis for concluding that the officers did not reasonably rely on the search warrant in executing the search.  Therefore, suppression is not warranted even assuming the affidavit did not present sufficient facts from which to conclude there was probable cause to search.   Accordingly, there is no basis for excluding either the physical evidence seized or the defendant's subsequent statements.

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to suppress evidence seized through a search of his residence (doc. 19) is DENIED.

**DONE AND ORDERED on this 26th day of May, 2011.**

                                               *s/ M. Casey Rodgers*
                                               **M. CASEY RODGERS**
                                               **United States District Judge**